WO  KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sergio Soto,<br><br>  Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>  Defendants. | No. CV 19-05634-PHX-JAT (MHB)<br><br>**ORDER** |

Plaintiff Sergio Soto, who is currently confined in the Arizona State Prison Complex-Yuma, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants move for summary judgment. (Docs. 41, 43.) Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 44), and he opposes the Motion. (Doc. 45.)

**I.  Background**

In his Second Amended Complaint, Plaintiff relevantly alleges as follows. On April 10, 2019, Defendant Zambada escorted Plaintiff, who had his hands cuffed behind his back, to see Sergeant Totten regarding alleged overcrowding in the cells. When Totten told Plaintiff he was being processed for stealing, Plaintiff began to argue with Totten, and Defendant Zambada sprayed Plaintiff in the eyes with pepper spray from inches away and took Plaintiff to the ground. Defendant Hasz then arrived and took Plaintiff to a side recreation pen where Defendant Hasz knocked Plaintiff to the ground and began kicking Plaintiff in his left ribcage and dragged him 20-30 feet where other officers continued to

kick and punch him. Plaintiff asserts that he suffered a permanently injured right elbow and psychological issues.

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment excessive force claims against Defendants Zambada and Hasz in their individual capacities. (Doc. 16.) The Court dismissed the remaining claims and Defendants. (*Id.*)

Defendants assert that they are entitled to summary judgment because Plaintiff did not properly exhaust his available administrative remedies.

**II.    Legal Standards**

   **A.    Summary Judgment**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B.     Exhaustion

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If the defendants move for summary judgment for failure to exhaust and the evidence shows that the plaintiff did, in fact, exhaust all available administrative remedies, it is appropriate for the court to grant summary judgment sua sponte for the nonmovant on the issue. *See Albino*, 747 F.3d at 1176 (pro se prisoner did not cross-move for summary judgment on issue of exhaustion, but because he would have succeeded had he made such a motion, sua sponte grant of summary judgment was appropriate).

### III.     Facts[1]

#### A.     The Arizona Department of Corrections (ADC) Grievance Process

Department Order 802 (DO 802), Inmate Grievance Procedure, with an effective date of October 16, 2016, governs the ADC's inmate grievance procedure and is the version that was in effect at all times relevant to this lawsuit. (Doc. 42 ¶ 5.) DO 802 sets forth the procedures that inmates must follow to complete the prison administrative grievance process through the Director's level, which is the final step of the administrative grievance process for non-medical inmate grievances. (*Id.* ¶ 6.) The policy provides that inmates may use the grievance process for issues related to any aspect of institutional life or condition of confinement that directly and personally affects the inmate grievant, including written instructions (i.e., Department Orders, Director's Instructions, Post Orders, and Technical Manuals), procedures, and actions of staff. (*Id.*) DO 802 informs inmates that, pursuant to the PLRA, they must exhaust the ADC's Inmate Grievance Procedure prior to filing any complaint in federal court. (*Id.* ¶ 7.)

A written copy of the Inmate Grievance Procedure is available to inmates at each prison unit's Inmate Resource Library. (*Id.* ¶ 10.) Inmates also receive a written and oral explanation of the Inmate Grievance Procedure during intake and as part of the orientation

---

[1] Because Plaintiff did not file a controverting statement of facts, the Court will consider Defendants' facts undisputed unless they are clearly controverted by Plaintiff's first-hand allegations in the verified Complaint or other evidence on the record. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion.).

process when they transfer to a new facility. (*Id.*)

Under the policy, "[i]nmates may utilize the Inmate Grievance Procedure regardless of their disciplinary status, housing location, or classification." (*Id.*)

The Inmate Grievance Procedure for non-medical grievances is a four-step review process for inmates to seek resolution of issues they encounter while incarcerated. (*Id.* ¶ 12.) The first step of the Inmate Grievance Procedure requires inmates to attempt to resolve their complaints through informal means by discussing the issue with staff in the area most responsible for the complaint. (*Id.* ¶ 13.)

If the inmate is unable to resolve his complaint through informal means, the second step of the Inmate Grievance Procedure is for the inmate to submit an Informal Complaint on an Informal Complaint Resolution Form 802-11 to the Correctional Officer III ("CO III"). (*Id.* ¶ 14.) The CO III will informally investigate and attempt to resolve the issue raised in the Informal Complaint Resolution form and provide the inmate with a written response on the Inmate Informal Response Form 801-12 within 15 workdays. (*Id.* ¶ 15.)

If the inmate is dissatisfied with the Inmate Informal Complaint Response or if the time frames for the CO III to provide a response have been exceeded, the third step of the Inmate Grievance Procedure is for the inmate to submit a Formal Grievance (using the Inmate Grievance Form 802-1 and/or the Inmate Grievance-GF Supplement Form 802-7) to the unit CO IV Grievance Coordinator who will log the Formal Grievance and investigate the issue. (*Id.* ¶ 16.) Within 15 working days following receipt of the formal grievance, the Deputy Warden will issue a written response to the inmate that includes the Deputy Warden's decision and supporting rationale. (*Id.* ¶ 17.)

The fourth and final step of the Inmate Grievance Procedure is for the inmate to appeal the decision of the Deputy Warden to the Director by submitting an Inmate Grievance Appeal Form 802-3 to the unit CO IV Grievance Coordinator. (*Id.* ¶ 18.) Inmates may not submit an appeal to the Director until the first three steps of the Inmate Grievance Procedure described above have been exhausted. (*Id.*)

The unit CO IV Grievance Coordinator will log, process, and forward the Inmate

Grievance Appeal documents to the Central Office Appeals Officer within five workdays of receiving the Inmate Grievance Appeal from the inmate. (*Id.* ¶ 19.) Within 30 calendar days of receipt of the Inmate Grievance Appeal, the Central Office Grievance Appeals Officer shall prepare a response and submit it to the Director for approval and signature. (*Id.* ¶ 20.)

The ADC considers that the Director's decision is final and constitutes exhaustion of all remedies. (*Id.* ¶ 22.)

If an inmate does not receive a response at any stage of the grievance process within the time period specified, he may proceed to the next stage of the grievance process as if he had received a response. (*Id.* ¶ 23.) The time to proceed to the next stage of the grievance process begins to run the day after a response was due back to the inmate. (*Id.*)

### B. Plaintiff's Grievances

On April 18, 2019, Plaintiff submitted an Inmate Informal Complaint Resolution form wherein he wrote, "I have been assaulted by Lt. Hasz and his staff on 4-10-19. . ." (*Id.* ¶ 25.) Plaintiff also complained of multiple unrelated issues in his April 18, 2019 Inmate Informal Complaint Resolution. (*Id.*) Also on April 18, 2019, Plaintiff mailed a letter to the ADC Central Office, with the words "Emergency Assaulted by Staff" written at the top of the letter and directed to "To whom it may concern," wherein he alleges that he was assaulted on April 10, 2019. (*Id.* ¶ 26.)

Plaintiff has asserted and testified that the April 18, 2019 letter that he mailed to the ADC Central Office was his "final appeal." (*Id.* ¶ 27.) Seven working days later, on April 29, 2019, Plaintiff filled out an Inmate Grievance form wherein he wrote about numerous issues, including having "been assaulted by Hasz and staff." (*Id.* ¶ 28.) Plaintiff crossed out the word "Grievance" at the top of the form and added the word "Informal." (*Id.*) Plaintiff also crossed out "Grievance Coordinator" and addressed the form to "C.O. IV Valenzuela." (*Id.*)

On May 16, 2019, Plaintiff received a response to his April 18, 2019 Inmate Informal Complaint. (*Id.* ¶ 29.)

On June 6, 2019, Plaintiff submitted an Inmate Informal Complaint Resolution form to CO IV Valenzuela that addressed issues unrelated to his excessive force claim. (*Id.* ¶ 30.) On June 17, 2019, Plaintiff received an Inmate Letter Response from the ADC's Offender Services Bureau responding to the inmate letter Plaintiff mailed to the ADC's Central Office on April 18, 2019. (*Id.* ¶ 31.)

Plaintiff never submitted an Inmate Grievance to the unit CO IV Grievance Coordinator or an Inmate Grievance Appeal to the Director, through the unit CO IV Grievance Coordinator, regarding his Count One Eighth Amendment excessive force claim. (*Id.* ¶ 32.)

## IV. Discussion

Defendants argue that Plaintiff failed to exhaust his available administrative remedies because the ADC's Inmate Grievance Procedure was available to Plaintiff, Plaintiff received both written and verbal instructions on how to utilize the procedure at the outset of his confinement and each time he was transferred to a different unit, but Plaintiff did not exhaust his available administrative remedies. Defendants assert that Plaintiff filed an Informal Complaint on April 18, 2019, but then without waiting for a response to the Informal Complaint and without waiting for the response deadline to expire, he submitted a Formal Grievance form that he modified into an "Inmate Informal" form on April 29, 2019, and then never submitted any other grievance documents relating to his claim. Defendants assert that because Plaintiff did not submit a Formal Grievance to his Grievance Coordinator and did not submit an Inmate Grievance Appeal to the Director, he failed to properly follow the ADC's grievance procedure.

In Response, Plaintiff seems to suggest that threats somehow deterred him from exhausting. (Doc. 45 at 1-2 ("Plaintiff has complied with Rule 56 of Civil Procedure to the extent possible, under detention and r[e]prisals from staff, Plaintiff also cite[]s Hernandez v. Schriro . . . stating threats of violent reprisal may, in some circumstances render administrative [sic] unavailable, or otherwise justify inmate's failure to pursue administrative remedies."). Plaintiff states that he suffered "hardship by staff not providing

[him] [sic] in a timely manner as required by Dept [sic] policy, basically ignored [sic]." (*Id.* at 3.) Plaintiff also cites to his deposition testimony where he testified that on the day of the alleged excessive force, he was approached by Sergeant Totten, who told him "you're finished, you're done," which Plaintiff interpreted as a threat that Sergeant Totten was going to "retaliate somehow with [him and that he] might as well brace for another assault or something." (*Id.* (citing deposition testimony at Doc. 45 at 5-6).) Plaintiff also appears to assert that he put Defendants on notice of his claims through discovery in this action.

Although a failure to exhaust may be excusable based on a threat of retaliation, the prisoner must show that (1) the threat of retaliation actually deterred the inmate from lodging a grievance or pursuing a particular part of the process, and (2) "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing part of the grievance process that the inmate failed to exhaust." *McBride v. Lopez*, 791 F. 3d 1115, 1120 (9th Cir. 2015) (citation omitted). Where there is a mere allegation of fear based on a previous hostile interaction between a prisoner and prison officials, such allegation, by itself, is not sufficient to show that a prisoner of ordinary firmness would not have pursued the grievance process. *Id.* at 1121.

Plaintiff has not made any allegations that he was threatened with retaliation if he filed grievances or pursued his excessive force claim through the grievance process. Although Plaintiff asserts that he construed a comment by Sergeant Totten as a threat, the comment was unrelated to the grievance process and was a hostile interaction, but is not, in itself sufficient to show that a prisoner of ordinary firmness would not have pursued the grievance process. Moreover, Plaintiff indeed filed grievances relating to the subject incident, but did not follow all of the steps of the process, which demonstrates that Plaintiff was not generally deterred from following the grievance process. Accordingly, Plaintiff's claims that he was deterred from following the grievance process by the comment made by Sergeant Totten or unidentified threats is unsupported by any evidence in the record. Plaintiff's remaining arguments are unclear and are not supported by any evidence that the

grievance process was effectively unavailable to him.

For the foregoing reasons, summary judgment will be granted in favor of Defendants.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. 41) and the Joinder thereto (Doc. 43).

(2) Defendant's Motion for Summary Judgment (Doc. 41) and the Joinder thereto (Doc. 43) are **granted**, and the action is terminated without prejudice for failure to properly exhaust available administrative remedies. The Clerk of Court must enter judgment accordingly.

Dated this 21st day of May, 2021.

James A. Teilborg
Senior United States District Judge